**FILED**

12/28/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0382

# SYNOPSIS OF THE CASE[1]

**2021 MT 324, DA 20-0382: STATE OF MONTANA,** Plaintiff and Appellee, v. **QUINCY SMITH,** Defendant and Appellant.

The Montana Supreme Court held today that a deputy sheriff violated a Montana resident's constitutional right to privacy when he continued to question the resident in front of his own home regarding a suspected traffic violation after the man told him to leave and come back with a warrant.

A Ravalli County Deputy Sheriff driving on a rural residential road after dark passed Quincy Smith, who was driving 17 mph over the speed limit. The deputy started his police lights and turned around to pull Smith over. Within seconds, Smith pulled into a 350-foot driveway and stopped the car near the residence. The deputy pulled in behind him and saw Smith and his passenger standing outside the car. The deputy explained that he had stopped them for speeding and asked both for their identification. The two men explained that they lived there and that the officer was on private property. They refused to cooperate and told the deputy to leave and come back with a warrant. The deputy did not leave and continued to attempt to question them, suspecting that Smith was under the influence after the deputy smelled alcohol on him. The deputy called for a backup officer when the two men refused to provide any information. Smith was arrested for DUI, speeding, resisting arrest, and obstructing a peace officer.

The Supreme Court held that Smith had a right to privacy in the driveway of his residence under the Montana Constitution. The nature of the property itself did not give him an expectation of privacy because the home had no gate at the entrance to the driveway and no "No Trespassing" signs posted or any other barriers to entry. But Smith had an actual and reasonable expectation of privacy once he communicated his expectation of privacy to the deputy. The privacy of the home is at the "very core" of constitutional search and seizure protections. Society would recognize Smith's actual expectation of privacy as reasonable when he refused to answer a law enforcement officer's questions outside his own home absent a warrant.

The Court said the deputy acted appropriately when he followed Smith into the driveway to complete a traffic stop the deputy initiated on a public road. The deputy's initial questions to determine who lived at the home and whether Smith was the driver were minimally intrusive and necessary to inform him whether he should continue or seek a warrant for further investigation. But once Smith explicitly invoked his right to privacy

---

[1] This synopsis has been prepared for the convenience of the reader. It constitutes no part of the Opinion of the Court and may not be cited as precedent.

and demanded that the officer get a warrant, the constitution required that the deputy stop his questioning unless and until he determined he needed a warrant.

The Court pointed out that there were no other circumstances to indicate urgent reasons not to get a search warrant. When Smith asked him to leave, the officer knew only that Smith had been speeding. He had seen no sign of impaired driving and did not suspect that Smith was under the influence until several minutes later. There was no evidence that Smith presented any danger or risk of harm. As a result, the State did not show any of the circumstances that would allow a criminal investigation to proceed without first obtaining a search warrant.

Agreeing with the Court, Justice Rice emphasized that the deputy was justified in following Smith's vehicle up the driveway because he could not have known Smith was heading to *his* residence rather than simply trying to flee or hide up a random road. Justice Rice agreed that once Smith asserted a privacy right at his own residence, the deputy could not engage in further warrantless investigation. But he could have completed the traffic stop he started by issuing Smith a Notice to Appear on the speeding violation. If at that time the officer saw signs of intoxication, he would have had to retreat from the property and obtain a warrant in order to conduct a DUI investigation, which he likely could have done over the telephone from the bottom of the driveway.